IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILSON TROY GODFREY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:16-CV-580 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Wilson Troy Godfrey ("Godfrey") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Godfrey alleges that the Administrative Law Judge ("ALJ") erred by (1) giving limited weight to the opinions of Godfrey's two treating physicians and greater weight to the opinions of two state agency physicians; (2) failing to conduct a function-by-function analysis when determining Godfrey's residual functional capacity ("RFC"); and (3) improperly discounting Godfrey's credibility. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Godfrey's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

1

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Godfrey failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Godfrey protectively filed for SSI and DIB on September 11, 2012, claiming that his disability began on July 15, 2011. R. 226. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 139, 154. On October 20, 2015, ALJ Jeffrey J. Schueler held an administrative hearing to consider Godfrey's disability claim. R. 57–85. Godfrey was represented by an attorney at the hearing, which included testimony from Godfrey and vocational expert Robert Jackson. Id.

On November 18, 2015, the ALJ entered his decision analyzing Godfrey's claim under the familiar five-step process,[2] and denying Godfrey's claim for disability. R. 42–52. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

2

found that Godfrey suffered from the severe impairments of bilateral knee osteoarthritis and obesity. R. 44. The ALJ further found that Godfrey retained the RFC to perform a range of light work, but he is restricted to lifting about twenty pounds occasionally and ten pounds frequently, standing and/or walking up to six hours in an eight-hour period, and sitting for up to six hours in an eight-hour period. R. 46. Next, the ALJ found that Godfrey can "never climb ladders, ropes, or scaffolds," but he can "occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl." Id. While the ALJ recognized the limitations in Godfrey's RFC, the ALJ determined that Godfrey could return to his past relevant work as a monitor technician or a clinical secretary. R. 51. Thus, the ALJ concluded that Godfrey was not disabled. Id.

Godfrey appealed the ALJ's decision to the Appeals Council, but his request for review was subsequently denied. R. 1. This appeal followed.

## ANALYSIS

Godfrey challenges the ALJ's decision denying his social security disability benefits on three grounds: (1) that the ALJ erred in giving less weight to the opinions of Godfrey's treating physicians than he gave to the state agency physicians; (2) that the ALJ failed to perform a function-by-function analysis when developing Godfrey's RFC; and (3) that the ALJ failed to adequately explain the credibility determination of Godfrey's statements.

**Treating Physicians**

Godfrey claims that the ALJ erred when he accorded less weight to Godfrey's treating physicians while according more weight to the state agency physicians. Specifically, Godfrey

---

other work. Heckler v. Campbell, 461 U.S. 458, 460–62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

argues that the "ALJ failed to provide good reasons for his rejection of the opinions of [Godfrey's treating physicians] as required." Dkt. No. 15, at 13.

The opinions at issue were rendered by Godfrey's treating orthopedic surgeons, Drs. Thomas K. Miller and John W. Mann III. Dr. Miller stated that Godfrey can stand and walk for two hours in an eight-hour workday, can occasionally balance, and can never climb, kneel, crouch, crawl, or stoop. R. 369. Dr. Miller also concluded that Godfrey would be absent from work more than three times each month. R. 371. Similarly, Dr. Mann stated that Godfrey can stand and walk for four hours in an eight-hour workday, can frequently lift and carry twenty pounds of weight, and can occasionally lift and carry fifty pounds of weight. R. 407. Dr. Mann further explained that Godfrey is occasionally capable of climbing, balancing, crouching, and stooping, but that he is never capable of kneeling or crawling. R. 408. Additionally, Dr. Mann concluded that Godfrey would be absent from work about once a month. R. 410.

Conversely, the state agency medical consultants subsequently explained that Godfrey is not as limited as his treating physicians assert. Robert Keeley, M.D., stated that Godfrey is capable of frequently lifting and carrying ten pounds, occasionally lifting and carrying twenty pounds, and walking, standing, and sitting for six hours in an eight-hour workday. R. 94. Dr. Keeley also noted that Godfrey is occasionally capable of climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but is never capable of climbing ladders, ropes, and scaffolds. Id. Robert McGuffin, M.D., rendered a similar opinion, stating that Godfrey is capable of frequently lifting and carrying ten pounds, occasionally lifting and carrying twenty pounds, and walking, standing, and sitting for six hours in an eight-hour workday. R. 118. Dr. McGuffin also explained that Godfrey is capable of frequently stooping and occasionally balancing,

4

crouching, crawling, kneeling, and climbing ramps and stairs, but that he should never climb ladders, ropes, or scaffolds. Id.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348,

5

2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

The ALJ accorded great weight to the opinions of non-treating, state agency medical consultants and accorded limited weight to the opinions of Godfrey's treating physicians in Drs. Mann and Miller, specifically giving the least weight to Dr. Miller's opinion.[3] R. 50. The ALJ explained that "physical examination findings[,] the conservative course of treatment . . . . [and t]reatment notes from [Godfrey's treating] sources do not support the severity of limitations they described." Id. In giving greater weight to the non-treating state agency medical consultants, the ALJ stated that "they each have a high level of understanding of the Social Security disability program and had the opportunity to review all available medical records when forming their opinions[, which are] consistent with treatment notes." Id.

Godfrey contends that "[t]he ALJ does not point to any other persuasive or contradictory evidence" when ruling that the medical opinions of Dr. Miller and Dr. Mann are entitled to less weight than the opinions of the state agency medical consultants. Dkt. No. 15, at 14. However, the ALJ articulated a detailed description of Godfrey's medical history, citing to specific exhibits which indicate that the objective medical evidence is inconsistent with the opinions of Drs.

---

[3] The ALJ's opinion first states that he accorded "less weight to *Dr. Mann's* opinion," but this appears to be an error by the ALJ. R. 50 (emphasis added). A deeper look at this section of the ALJ's opinion combined with a review of the administrative record leads one to the conclusion that the ALJ actually gave the least weight to Dr. Miller's opinion.
    The ALJ stated that "Dr. Miller's opinion is accorded less weight [compared to Dr. Mann] because the postural limitations in his opinion are too severe compared to the record, and he described a rate of absenteeism that is out of proportion to the medical record, which indicates control of the claimant's knee pain with orthovisc injections." Id. Regarding Godfrey's absenteeism, Dr. Mann stated that he would miss work "about once a month" while Dr. Miller stated that he would miss work "more than three times a month." R. 371, 410. It is therefore evident that the ALJ meant to accord the least weight to Dr. Miller, not Dr. Mann.

Miller and Mann. See R. 47–50. The ALJ noted that, during the relevant period,[4] Godfrey "received rather conservative treatment," "benefitted from a scope on his right knee and physical therapy," does not take any prescribed pain medications, and has reported a significant reduction in pain after undergoing orthovisc injections despite claiming at the administrative hearing that they "really don't help." R. 50, 70. The ALJ ultimately concluded that the objective medical evidence undermines the opinions of treating physicians Drs. Mann and Miller.

Godfrey first complained of knee pain in November 2011, but he was not interested in either X-rays or physical therapy. Godfrey was referred to an orthopedic physician, and prescribed no other treatment. R. 313–15. In February 2012, Godfrey complained of knee pain to Andrea Herbert, P.A., stating that the pain was exacerbated by heavy lifting. R. 325. Physical examination revealed no swelling, locking, or buckling, or noticeable limp. Id. Ms. Herbert administered injections to Godfrey's knees. R. 327. He later returned in June 2012 to receive more injections, stating that they had been working. R. 343. Godfrey requested additional knee injections in August 2012, stating that they alleviated his pain "tremendously." R. 359. Godfrey received more injections in January 2014, June 2014, and December 2014, each time stating that the injections helped his symptoms for months at a time. R. 426–27, 431, 435–37, 444.

Besides his knee pain resulting from osteoarthritis, Godfrey also suffered a medial meniscus tear in his right knee in March 2013. R. 380. In April 2013, Godfrey underwent a right knee arthroscopy and shaving chondroplasty of the patella. R. 396–97. Two weeks after the surgery, Godfrey experienced minimal pain, was walking without an assistive device, and was deemed to be "[d]oing well postoperatively." R. 390–91.

---

[4] The relevant period is the alleged date of onset, July 15, 2011, through the date of the ALJ's decision, November 18, 2015.

7

During April and May 2013, Godfrey underwent physical therapy. R. 455–76. After five weeks of physical therapy, Godfrey requested to stop physical therapy because he reported that his right knee continued to improve, and although his left knee was giving him pain, he believed that an arthroscopy would help his left knee just as it helped his right knee. R. 473. At the end of physical therapy, Godfrey indicated that he had "no difficulty" with usual work, house work, walking between rooms, lifting objects from the floor, sitting for one hour, and getting in and out of his car. R. 474. Additionally, Godfrey indicated he had only "a little bit of difficulty" with squatting, performing "heavy" activities around his home, walking one mile, and standing for one hour. Id.

Substantial evidence supports the ALJ's finding that that the opinions of Drs. Mann and Miller are inconsistent with the objective medical evidence in the record. Although Godfrey always had knee pain during the relevant period, the objective evidence does not corroborate Drs. Mann's and Miller's opinions that Godfrey is incapable of standing, walking, and sitting more than two-to-four hours in a workday and will miss work more than three times each month. The record reflects that Godfrey was never prescribed pain medication to combat his symptoms, experienced relief for many months after receiving injections in his knee, never used an assistive device to walk, benefitted from an arthroscopy of his right knee, and benefitted from five weeks of physical therapy. In fact, the record contains statements Godfrey made to doctors about the improvement that injections, arthroscopy, and physical therapy made to his knee pain. There is simply no evidence in the record that reflects an inability to stand for more than two-to-four hours in a day or a need to miss work more than three times in a month as Drs. Mann and Miller suggest. The ALJ gave good reasons for not according controlling weight to the opinions of Drs. Mann and Miller.

8

Additionally, the ALJ's decision to accord greater weight to the opinions of state agency medical consultants Drs. Keeley and McGuffin is supported by the three factors in 20 C.F.R. § 404.1527(c)(3)–(5). The opinions of Drs. Keeley and McGuffin that Godfrey is capable of standing and walking for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, lifting and carrying twenty pounds occasionally and ten pounds frequently, and climbing ramps and stairs is consistent with the objective medical evidence in the record. While neither Drs. Keeley nor McGuffin are experts in orthopedics, both "have a high level of understanding of the Social Security disability program and had the opportunity to review all available medical records when forming their opinions." R. 50.

Unlike Brown, the ALJ here did not "rel[y] on cherry-picked evidence skewed to contradict [Godfrey's] doctors." Brown, 873 F.3d at 267. The ALJ laid out Godfrey's medical history in detail, explained the opinions of both his treating physicians and the state agency medical consultants, and ultimately ruled that the opinions of his treating physicians were inconsistent with the objective medical evidence while the opinions of the state agency medical consultants were not. Here, substantial evidence supports the weight given to the opinions of Drs. Keeley and McGuffin and the conclusion to accord less weight to the opinions of Drs. Mann and Miller. Id. at 268 (citing 20 C.F.R. § 404.1527(c)(3)–(5)).

**Function-by-Function Analysis**

Godfrey argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to conduct a function-by-function analysis. Specifically, Godfrey contends that "the ALJ failed to properly consider whether plaintiff's pain is so continuous and/or so severe that it prevents him from working a full eight hour workday." Dkt. No. 15, at 17.

9

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

The ALJ crafted a narrative which detailed Godfrey's medical history, alleged symptoms, and opinions of both treating physicians and state agency medical consultants. See R. 46–50. This narrative discussion allows this Court to see how the evidence in the record—both medical

10

and nonmedical—supports the ALJ's RFC determination. The ALJ's conclusion that Godfrey retains the RFC to perform a limited range of light work was rationally reached by the ALJ's analysis of the evidence in the record, where he ultimately relied on several key facts: (1) Godfrey received "rather conservative treatment," including not being prescribed pain medication; (2) he benefitted from both physical therapy and an arthroscopy; and (3) injections in his knees greatly alleviated his symptoms. R. 50.

 Indeed, there is no evidence in the record of any prescription for pain medication for Godfrey's ailments during the relevant period. Although he was not prescribed pain medication, Godfrey experienced relief from his knee pain in other ways. The ALJ noted that Godfrey received multiple injections in his knees, which he reported significantly alleviated his pain for months at a time. R. 327, 343, 359, 426–27, 431, 435–37, 444. The ALJ explained that Godfrey received an arthroscopy on his right knee and after five months of physical therapy, he was in no pain and moved well. R. 396–97, 455–76. After physical therapy, Godfrey reported that he had "no difficulty" or only "a little bit of difficulty" performing everyday functions and light work around his house. R. 474. The ALJ concluded that Godfrey retained the residual functional capacity to perform a range of light work—including his past relevant work as a monitor technician and a clinical secretary—in an "accurate and logical" way. Monroe, 826 F.3d at 189 (quoting Clifford, 227 F.3d at 863).

 The ALJ is not required to make specific findings related to Godfrey's subjective assertions that he must lie down during the day, is unable to maintain a static work posture, and has difficulty focusing and concentrating due to pain. The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence,

11

Godfrey's alleged symptoms, and the medical opinions of record. Id. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

**Credibility**[5]

Godfrey contends that the ALJ's assessment of his credibility is not supported by substantial evidence. Specifically, he claims that "the ALJ failed to specifically address [his] allegations regarding difficulty sitting and standing due to pain and weakness, his need to lie down during the day[,] or his difficulty concentrating and focusing." Dkt. No. 15, at 19–20.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Godfrey's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4p, (S.S.A. July 2, 1996); SSR 96-7p, (S.S.A. July 2, 1996).

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
 Here, SSR 16–3p was issued after the ALJ's consideration of Godfrey's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

In this case, the ALJ found that "[t]he credibility of [Godfrey's] allegations is weakened by inconsistencies between the extent of his allegations and the objective medical evidence." R. 51. The ALJ fully discussed Godfrey's medical history, the nonmedical evidence including Godfrey's subjective assertions, and the opinions of both treating and non-treating physicians, ultimately concluding that this evidence outweighed Godfrey's subjective allegations. The ALJ found that the treatment notes from Godfrey's doctors describing minimal pain, non-difficult movement, and conservative treatment combined with Godfrey's own statements to these doctors describing the great relief that he experienced from knee injections, an arthroscopy of his right knee, and physical therapy led the ALJ to find that Godfrey's allegations describing the severity of his limitations were not entirely credible. Because an ALJ's finding of credibility is to be given great weight by a reviewing court, see Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984), I find that substantial evidence supports the ALJ's finding that Godfrey's allegations regarding his symptoms of knee pain are not entirely credible.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Godfrey's claim for benefits and in determining that his physical and mental impairments would not significantly limit his ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Godfrey's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanksi, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 9, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge